IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CECIL BROWNE,                          :
                                       :
                Petitioner,            :
                                       :
        v.                             :        Civ. Act. No. 04-870-JJF
                                       :
THOMAS L. CARROLL,   Warden,           :
                                       :
                Respondent.            :

---

Cecil Browne.  Pro se Petitioner.

Loren C. Meyers, Chief of the Appeals Division, Elizabeth
McFarlan, Deputy Attorney General, and Gregory E. Smith, Deputy
Attorney General, Delaware Department of Justice, Wilmington,
Delaware.  Attorneys for Respondent.

---

**MEMORANDUM OPINION**

January 24, 2006
Wilmington, Delaware

**Farnan, Judge**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Cecil Browne. (D.I. 1.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner lived with his girlfriend Brenda Saunders at her home in Wilmington, Delaware for approximately four years, when the events leading to Petitioner's arrest and conviction unfolded. During an argument in the early morning hours of September 4, 1998, Petitioner forced Ms. Saunders to her knees and forced her to perform fellatio while holding a knife. Ms. Saunders bit Petitioner causing him to release her. She then went upstairs. Petitioner followed Ms. Saunders upstairs and again attempted to force her to perform fellatio. Petitioner struck Ms. Saunders, called her derogatory names, and attempted to have anal and vaginal intercourse with her.

Petitioner temporarily stopped assaulting Ms. Saunders while he telephoned his employer. After completing that phone call, he again tried to force Ms. Saunders to perform fellatio. According to Petitioner, the two of them engaged in voluntary intercourse. Ms. Saunders denied consenting to any sexual act with Petitioner on September 4, 1998.

1

Wilmington police arrested Petitioner and charged him with one count of first degree unlawful sexual intercourse, two counts of second degree unlawful sexual intercourse, two counts of attempted second degree unlawful sexual intercourse, and one count of possession of a deadly weapon during the commission of a felony.  In October 1998, the State indicted Petitioner on these same charges, and one additional charge of aggravated menacing. In December, while he was in custody, Petitioner was arrested on two counts of noncompliance with conditions of bond, and another indictment was issued in March 1999 in connection with these charges.  The October 1998 and May 1999 indictments were joined pursuant to a motion filed by the State.

Petitioner was convicted by a jury in September 1999, on three counts of third degree unlawful sexual intercourse and two counts of attempted third degree unlawful sexual intercourse (lesser-included offenses of the indicted charges).  The Superior Court granted Petitioner's motion for acquittal on the two counts of noncompliance with conditions of bond, and the jury acquitted Petitioner of the weapons charge and aggravated menacing. Petitioner was sentenced to an aggregate of forty years in prison, suspended after eleven years for fifteen years of decreasing levels of supervision.

Petitioner appealed, arguing that the Superior Court erred in: (1) denying his motion for acquittal as to the two counts of

unlawful sexual intercourse in the second degree; and (2)

refusing his requested jury instruction on the offense of

unlawful sexual contact in the third degree.  The Delaware

Supreme Court affirmed Petitioner's convictions and sentences.

Browne v. State, 2000 WL 1780761 (Del. Nov. 29, 2000).

In May 2002, Petitioner applied for post-conviction relief

pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61

motion"), alleging that his trial counsel provided ineffective

assistance by failing to: (1) disclose his pre-trial counsel's

ineffective assistance to the court; (2) raise a speedy trial

claim; (3) object to the admission of portions of his taped

statements made to police; and (4) object to various illegal pre-

trial matters.  State v. Browne, 2002  WL 31260008 (Del. Super.

Ct. Oct. 3, 2002).  The Superior Court denied Petitioner's Rule

61 motion, concluding that Petitioner's claims either had no

merit or were procedurally defaulted.  The Delaware Supreme Court

affirmed the Superior Court's decision.  Browne v. State, 2003 WL

21364452 (Del. June 9, 2003).

## II.  GOVERNING LEGAL PRINCIPLES

Congress enacted the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution

of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism."  Woodford v.

Garceau, 538 U.S. 202, 206 (2003)(internal citations and

quotation marks omitted).  Under the AEDPA, a petitioner in custody pursuant to a state court judgment must exhaust remedies available in the state courts before seeking habeas relief from a federal court.  28 U.S.C. § 2254(b),(c); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding.  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999);  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicates a federal habeas claim on the merits, then a federal court must review the claim under the standard contained in § 2254(d).  Section 2254(d) only permits federal habeas relief when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  28 U.S.C. § 2254(e)(1).  This

4

presumption of correctness applies to both explicit and implicit findings of fact, Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000), and is only rebuttable if the petitioner presents clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

If a petitioner fairly presents a habeas claim to a state's highest court, but the state court refuses to consider the claim because the petitioner failed to comply with an independent and adequate state procedural rule, the claim is deemed exhausted but procedurally defaulted. Harris v. Reed, 489 U.S. 255, 263 (1989); Werts, 228 F.3d at 192. A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51.; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).

III.  **DISCUSSION**

Petitioner presents eight grounds[1] for habeas relief in his Petition.  Specifically, Petitioner contends that: (1) both pre-trial counsel and trial counsel provided ineffective assistance; (2) his speedy trial rights were violated; (3) his confession was improperly admitted into evidence at his trial; (4) he was illegally arrested for noncompliance with bond conditions; (5) his October 1998 and March 1999 indictments were illegally joined; (6) the Superior Court failed to grant a mistrial after the jury submitted notes during its deliberations; (7) his sentence is illegal because it violates Delaware's Truth-in-Sentencing Guidelines and Blakely v. Washington, 542 U.S. 296 (2004); and (8) there was insufficient evidence to support his conviction and sentence and the trial court erred in failing to grant his request for a lesser included offense instruction on unlawful sexual contact in the third degree.  (D.I. 2.) Petitioner has exhausted state remedies for all eight claims by presenting them to the Delaware Supreme Court, either on direct appeal or post-conviction appeal.

   A.  Petitioner's Claim For Illegal Arrest For Non-
       Compliance With Bond Conditions

Petitioner was arrested on September 11, 1998, for his

---

[1]Petitioner actually presents nine grounds for relief, but the Court has combined Claims One and Eight because they both assert ineffective assistance of counsel.

6

conduct on September 4, 1998, which has been previously described.  His Order of Commitment explicitly states that "as a condition of your release on bail, you are ordered to have no contact, direct or indirect with Brenda C. Saunders," and "these conditions must be followed whether you post bail or are in jail." (D.I. 22.)  On September 15 and 16, 1998, Petitioner sent Ms. Saunders two letters.  Shortly thereafter, in December 1998, an arrest warrant issued charging Petitioner with two counts of noncompliance with conditions of bond.

Petitioner contends that his December 1998 arrest was illegal because (1) he was not released on bail at the time he violated the bond conditions, and (2) the Superior Court never held a preliminary (or bail) hearing.[2]  The Court concludes that Petitioner's claim is not cognizable on federal habeas review, because it presents issues of state law.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Pursuant to 11 Del. C. Ann. § 2109(b), a court may require an accused who is committed in lieu of bail to have no contact with the victim or the victim's family while he is in custody.  If the accused fails to comply with the conditions of bond, he shall be arrested.  11

---

[2]Respondents identify a third allegation with respect to the December 1998 arrest: the arrest was illegal because the police improperly questioned him without the presence of counsel. The Court will address this contention in the context of its discussion of Petitioner's ineffective assistance of counsel claims.

7

Del. C. Ann. § 2113(a). Further, there is no federal constitutional right to a preliminary hearing. See Gerstein v. Pugh, 420 U.S. 103, 118 n. 19 (1975). Although Delaware statutory law grants an accused the right to a preliminary hearing, this right to a preliminary hearing does not apply when the accused is already in custody for another crime. See 11 Del. C. Ann. § 1909; Garner v. State, 145 A.2d 68 (1958). Accordingly, the Court will dismiss Petitioner's claim of illegal arrest as non-cognizable on federal habeas review.[3]

    B. Claims Adjudicated on the Merits in State Court

    Petitioner's claims for ineffective assistance of counsel, speedy trial violation[4], and insufficient evidence to support his

_____

[3]     To the extent Petitioner's claim can be construed as alleging that any delay in holding a bail hearing violated his constitutional rights, the Court concludes that Petitioner's claim is moot in light of his acquittal on the charges for non-compliance with bond conditions. See Murphy v. Hunt, 455 U.S. 478, 481-82 (1982).

[4]     Respondents contend that Petitioner's speedy trial claim is procedurally barred. Although the state courts acknowledged that they could have denied this claim as procedurally defaulted, the Delaware Superior Court denied the claim on the merits, and the Delaware Supreme Court affirmed. Accordingly, the Court concludes that it is appropriate to review this claim on the merits under Section 2254(d)(1). See Harris v. Reed, 489 U.S. 255, 262 (1989) (holding that "a federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default"); Smith v. Freeman, 892 F.2d 331, 336 (3d Cir. 1989) (holding that a claim was not procedurally barred under a certain state procedural rule where the Pennsylvania courts did not rely on the rule and addressed the merits of the claim instead).

conviction were denied by the Delaware Supreme Court on the

merits.  See Browne, 2001 WL 1780761(direct appeal); Browne, 2003

WL 21364452 (post-conviction appeal).  Consequently, the Court

must review the claims under § 2254(d)(1) to determine if the

Delaware Supreme Court's denial of the claims was contrary to, or

an unreasonable application of, United States Supreme Court

precedent.

1.  Petitioner's speedy trial claim

Petitioner was arrested on September 11, 1998, and his trial

commenced on September 14, 1999.  The first scheduled trial date

was June 10, 1999.  Prior to trial, Petitioner's counsel, a state

public defender, was relieved and another public defender,

Raymond Radulski, was assigned.  On June 1, 1999, Mr. Radulski

requested a continuance in order to become familiar with the

case.  The Superior Court granted the continuance, and the trial

was rescheduled to a mutually convenient date for the defense and

the prosecution in September 1999.

Based on the one-year between his arrest and trial,

Petitioner contends his right to a speedy trial was violated.

Petitioner also contends that he was unduly prejudiced by the

one-year time frame from his arrest to trial, because potential

witnesses moved and could not testify at his trial.

The right to a speedy trial is guaranteed by the Sixth

Amendment.  See U.S. Const. amend. VI.  The United States Supreme

9

Court has directed courts to consider four factors when analyzing a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id.

The Delaware Superior Court analyzed and denied Petitioner's speedy trial claim under Barker, and the Delaware Supreme Court affirmed the decision after concluding that Petitioner had not been prejudiced by the one-year time period from his arrest to trial. The Court has reviewed the record and concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, Barker. Although Petitioner filed his own pro se motion stating that he opposed the June 1999 continuance, which is one Barker factor, the Court concludes that the Delaware Supreme Court was correct when it concluded that Petitioner was not actually prejudiced by the delay. Although Petitioner's attorney was replaced on the eve of trial in June 1999, and Mr. Radulski requested a continuance to allow him sufficient time to prepare the case for trial, the trial was only delayed for three months, a period of time which benefitted Petitioner by allowing his trial counsel to become informed about

10

the case and prepare for trial.

As for Petitioner's contention that potential witnesses were unable to testify because of the delay of the trial for three months, the Court finds that, the record demonstrates that the two potential witnesses did not testify because Ms. Saunders and her family threatened them.  Further, these witnesses would have testified regarding Ms. Saunders' alleged history of abusing Petitioner and did not have any information regarding the charges at issue in the trial.  On this record, the Court concludes that the Delaware Supreme Court's denial of Petitioner's speedy trial claim was neither contrary to, nor an unreasonable application of, <u>Barker</u>, and therefore, the Court will dismiss the speedy trial claim.

> 2.  Petitioner's claim that the evidence was insufficient to establish attempted second degree unlawful sexual intercourse and the trial court erred in failing to give a jury instruction on a lesser offense

Petitioner alleges that Counts V and VI of the Indictment, charging him with attempted second degree unlawful sexual intercourse, should have been dismissed at the end of the prosecution's case for lack of sufficient evidence.  Counts V and VI charge:

> CECIL BROWNE . . . did intentionally attempt to engage in sexual intercourse with Brenda Saunders by attempting to place his penis in her anus [and vagina] without her consent and the defendant inflicted physical injury upon the victim on the occasion of the crime which acts, under the circumstances as he

11

> believed them to be, constituted a substantial step in
> the course of conduct planned to culminate in the
> commission of Unlawful Sexual Intercourse in the Second
> Degree, in violation of 11 Del. C. Section 774.

Petitioner contends his conduct did not amount to a substantial
step toward the commission of the offense of unlawful sexual
intercourse because he did not have an erection at the time, and
therefore, was incapable of performing intercourse.

The United States Supreme Court precedent governing
Petitioner's insufficient evidence claim is Jackson v. Virginia,
443 U.S. 307 (1979).  Pursuant to Jackson, "the relevant question
is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a
reasonable doubt."  Id. at 319.

To prove attempted unlawful sexual intercourse in the second
degree, the prosecution had to establish that Petitioner
attempted to intentionally engage in sexual intercourse with Ms.
Saunders without her consent and that he inflicted physical,
mental, or emotional injury upon her. See 11 Del. C. Ann. §
774(1)(a)(Repealed 1998).  "A person is guilty of an attempt to
commit a crime if the person: (2) intentionally does nor omits to
do anything which, under the circumstances as the person believes
them to be, is a substantial step in a course of conduct planned
to culminate in the commission of the crime by the person."  11
Del. C. Ann. § 531(2).  The term "substantial step" is defined as

12

"an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting."   11 Del. C. Ann. § 532.

At trial, Ms. Saunders testified that, after the second episode of oral sex, Petitioner "flipped [her] over and tried to put his penis in [her] rectum."  (D.I. 14, State's Ans. Br. in Browne v. State, No.598,1999, at 13.)  She also testified that Petitioner "was trying to force his penis into [her] vagina" and that "he was applying pressure with his penis."  Id. at 13-14. Ms Saunders further testified that "[h]e was really trying to - - it wasn't erect, so he was almost like trying to stuff it into my vagina."  Id.  Finally, at the conclusion of her testimony, Ms. Saunders stated that she did not consent to any of the sexual acts that occurred on September 4, 1998.

Ms. Saunders also described how Petitioner repeatedly hit her on the top of her head, flipped her, and spanked her on the buttocks.  Annette Carter, Ms. Saunders's sister, testified that the following day she observed bruises on her sister's right shoulder, legs, and buttocks.

In light of Ms. Saunders's testimony, the Court concludes that, even though Petitioner testified that he and Ms. Saunders engaged in consensual sexual acts, Ms. Saunders's testimony was sufficient to enable the jury to conclude that Petitioner attempted to perform non-consensual vaginal and anal intercourse

13

with her and that he injured her.  See Paullet v. Howard, 634
F.2d 117, 118 (3d Cir. 1980) (noting that, when there are
inconsistencies between the defendant's and prosecuting witness'
testimonies, the resolution of the case depends upon the jury's
findings on credibility).  Thus, the Court concludes that the
Delaware Supreme Court's denial of Petitioner's insufficient
evidence claim was neither contrary to, nor an unreasonable
application of, Jackson.

In a related claim, Petitioner challenges the refusal of the
trial judge to instruct the jury on third degree unlawful sexual
contact as a lesser included offense of the two charges of
attempted second degree unlawful sexual intercourse.  Respondents
contend that the Delaware Supreme Court's decision was neither
contrary to, nor an unreasonable application of, Supreme Court
precedent because there is no clearly established federal law
requiring a jury instruction on lesser-included offenses in non-
capital cases.  (D.I. 20, at 22.)

In Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme
Court held that due process requires a court to give a jury
instruction on lesser included offenses in capital cases when it
is supported by the evidence.  However, in Beck, and thereafter
in Schad v. Arizona, 501 U.S. 624 (1991), the Supreme Court left
open the question as to whether Beck should apply to jury
instructions in non-capital cases; however, the Third Circuit has

14

extended Beck to non-capital cases.  See, e.g., Kontakis v.
Beyer, 19 F.3d 110, 119 & n.14 (3d Cir. 1994); Vujosevic v.
Rafferty, 844 F.2d 1023, 1027 (3d Cir. 1988)(citing cases);  D.
Hall, The "Third Option": Extending the Lesser Included Offense
Doctrine to the Non-Capital Context, 29 Hofstra L. Rev. 1333,
1350-59 (2001).

    The Court concludes that based on the evidence adduced at
Petitioner's trial, a jury instruction on unlawful sexual contact
in the third degree was not required.  At the time of
Petitioner's arrest, under Delaware law, unlawful sexual
intercourse in the second degree involved non-consensual sexual
intercourse combined with physical, emotional, or mental injury
to the victim, and third degree unlawful sexual intercourse
involved non-consensual sexual intercourse without injury.  See
11 Del. C. Ann. §§ 773, 774 (repealed 1998).  In contrast,
unlawful sexual contact in the third degree involved a person
having sexual contact with another person or causing the victim
to have sexual contact with the person or a third person and with
the knowledge that the contact is either offensive to the victim
or occurs without the victim's consent.  11 Del. C. Ann. § 767.

    Further, Delaware law provided that "sexual intercourse"
included any act of fellatio or cunnilingus regardless of whether

penetration[5] occurs, as well as "any act of physical union of the genitalia or anus of [one] person with the mouth, anus, or genitalia of another person.  It occurs upon any penetration, however slight."  11 Del. C. Ann. § 761(e).  In contrast, allegations of "sexual contact" included the intentional touching of another person's anus, breasts, buttocks, or genitalia, as well as the intentional touching of another person with his or her anus, breast, buttocks or genitalia.  11 Del. C. Ann. § 761(f).

The Superior Court trial judge denied Petitioner's request for an instruction on third degree unlawful sexual contact after determining that the evidence established either consensual sexual intercourse, which would warrant an acquittal, or non-consensual sexual intercourse or attempted non-consensual sexual intercourse, which would warrant a conviction for second degree unlawful sexual intercourse or attempted second degree unlawful sexual intercourse.[6]  The trial judge concluded that there was no evidence upon which the jury could rationally acquit Petitioner of second degree unlawful sexual intercourse or attempted second degree unlawful sexual intercourse, but convict him of unlawful

---

[5]    Penetration includes placing genitalia or any sexual device inside the mouth of another person.  11 Del. C. Ann. § 761(g).

[6]    Ms. Saunders testified that Petitioner's penis was not erect.

16

sexual contact. (D.I. 14, App. to State's Brief in <u>Browne v. State</u>, No. 598, 1999, at B-28 to B-29.)

During the trial, Petitioner testified that he and Ms. Saunders "got on the bed and . . . just started having sex on this, just regular old sex." <u>Id.</u> at B-26. With the element of sexual intercourse established, or at least attempted sexual intercourse, the Court concludes that the Superior Court's denial of the request for a lesser included offense instruction by the trial judge was reasonable. Accordingly, the Court concludes that Petitioner's claim based on the Superior Court's refusal to charge the jury on unlawful sexual contact does not warrant federal habeas relief.

3.    Petitioner's ineffective assistance of counsel claims

To prevail on his ineffective assistance of counsel claims, Petitioner must satisfy the two-pronged standard enunciated by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and demonstrate that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance prejudiced the petitioner's defense; in other words, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 687-88, 692-94; See <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003). When applying the <u>Strickland</u> standard, the court "must indulge a

17

strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance." Id. at 689.

        a. Conflict of interest

Approximately one week before the originally scheduled trial
date, in June 1999, Raymond Radulski was substituted as
Petitioner's counsel, replacing Diane Clark-Streett. Both
attorneys were employed by the State Office of the Public
Defender. Petitioner contends that Mr. Radulski had a conflict
of interest which prevented him from raising the issue of Ms.
Streett's deficiencies to the trial court or to the Delaware
Supreme Court on direct appeal. Specifically, Petitioner
contends that Mr. Radulski was trying to "protect" Ms. Streett.
Although Petitioner presents this claim in the context of a
"conflict of interest," the Court will treat it as an ineffective
assistance of counsel claim.

It is well-established that an attorney does not provide
ineffective assistance by failing to raise improper or meritless
claims. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).
In the state courts of Delaware, ineffective assistance of
counsel claims are properly raised in a Rule 61 motion for post-
conviction relief, not during a trial or on direct appeal. See
Thomas v. Carroll, 2004 WL 758344, at *5 (D. Del. Jan. 30, 2004);
Desmond v. State, 654 A.2d 821, 829 (Del. 1994)(collecting
cases). Thus, the Court concludes that any "failure" to raise

the issue of the ineffectiveness of Ms. Streett's representation during trial or on direct appeal does not support an ineffective assistance of counsel claim under Strickland's first prong.

Additionally, the Court concludes that Petitioner remedied any failure to present this claim by raising it to the Delaware Superior Court in his Rule 61 motion. Accordingly, the Court concludes that Petitioner cannot establish prejudice under Strickland, and therefore, the Court concludes Petitioner's claim of ineffective assistance of counsel based on a "conflict of interest" argument does not warrant federal habeas relief under § 2254(d)(1).

b. Failure to investigate the case

Petitioner next contends that both attorneys who represented him failed to investigate a list of potential witnesses who would have testified that Ms. Saunders was the "real abuser" in the relationship, and he was the victim. (D.I. 1, at p. 52.) To succeed on claim alleging a failure of counsel to investigate potential witnesses, Petitioner must show how their testimony would have been favorable and material. See United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989); United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). Petitioner does not contend that any of the noted witnesses could have testified as to the events of September 4, 1998, but rather, Petitioner asserts that the witnesses would have testified as to prior bad

19

acts of Ms. Saunders and various attacks on her character.
Respondents contend that this type of testimony would have been
inadmissible under Delaware Rule of Evidence 608(b).  See Del. R.
Evid. 608(b); Weber v. State, 457 A.2d 674, 680 (Del. 1983)("The
limitation created by Rule 608(b) is designed to avoid minitrials
into the bad acts of witnesses which would require the use of
extrinsic evidence to prove such acts.").  Because the Court
agrees that the testimony identified by Plaintiff would have been
inadmissible under Rule 608(b) and irrelevant to the events that
occurred on September 4, 1998, the Court concludes that the
proffered testimony would have not have been material to
Petitioner's defense, and therefore, the Court concludes that the
Delaware Supreme Court reasonably applied Strickland to deny
Petitioner's ineffective assistance of counsel claim.

> c.  Failure to raise a speedy trial claim

Petitioner also contends that his attorneys were ineffective
for failing to file a speedy trial motion.  Because the Court has
previously concluded that Petitioner's speedy trial claim is
meritless, the Court concludes that neither attorney provided
ineffective assistance by failing to raise this non-meritorious
claim.  Therefore, the Court concludes that the Delaware Supreme
Court reasonably applied Strickland to deny Petitioner's
ineffective assistance of counsel claim.

> d.  Failure to challenge the September 1998
> indictment as illegal

20

Petitioner next contends that both his attorneys should have challenged his October 1998 indictment as being illegal. Specifically, Petitioner contends that he was indicted on a charge of aggravated menacing, even though he was never arrested for that offense. Under Delaware law, Petitioner's prosecution for aggravated menacing could be initiated by indictment or complaint. See Turner v. State, 812 A.2d 900 (Table), 2002 WL 31796224, at *1 n. 4 (Del. Dec. 13, 2002). Thus, the Court concludes that any challenge to the indictment by Petitioner on these grounds would have been meritless, and therefore, neither of Petitioner's attorneys provided ineffective assistance by failing to raise this non-meritorious objection to the indictment. Accordingly the Court concludes that the Delaware Supreme Court reasonably applied Strickland to deny Petitioner's ineffective assistance of counsel claim.

> e.  Failure to object to or move for a mistrial
>     due to the Superior Court's reaction to two
>     jury notes

During its deliberations, the jury sent the Superior Court judge two notes. The first note requested certain portions of Petitioner's testimony regarding what happened in the kitchen and dining room to be read back to the jury. The second note asked how long the jury needed to deliberate before it would be declared a hung jury. Petitioner contends that his trial counsel provided ineffective assistance by failing to object to the

21

Superior Court's denial of the first request, and by failing to object to the court's slow response to the hung jury question.

"A trial court has broad discretion in deciding whether to accede to a jury's request for a reading of testimony." U.S. v. Bertoli, 40 F.3d 1384, 1401 (3d Cir. 1994)(citing United States v. Zarintash, 736 F.2d 66, 69-70 (3d Cir. 1984)). Courts have recognized two legitimate reasons for denying a jury request for the read back of testimony: a jury may give undue weight to the portion of testimony read back to it, and requiring a court reporter to produce written transcripts would cause substantial delay to the orderly administration of the trial. Taylor v. State, 685 A.2d 349, 350 (Del. 1996)(citing United States v. Rabb, 453 F.2d 1012, 1013-14 (3d Cir. 1971).

In Petitioner's case, there is no indication that any court reporter notes were ready at the time of the jury request. Further, the jury requested Petitioner's testimony regarding the acts that occurred in the kitchen and dining room. Petitioner and Ms. Saunders both described the act of fellatio that occurred in the dining room while Petitioner was holding a knife. Their testimonies differed, however, on the issue of consent, and on how Petitioner obtained the knife and whether or not he was threatening to use the knife. Given the fact that Petitioner was acquitted of the weapons charge, and that the jury did not find him guilty of first degree unlawful sexual intercourse (which

22

involves the use of a deadly weapon), the Court concludes that
Petitioner was not prejudiced by any failure of trial counsel to
object to the Superior Court's denial of the jury's transcript
request.

With respect to Petitioner's contention regarding the jury's
second note, a judge may properly instruct a deadlocked jury to
continue deliberations and attempt to arrive at a verdict.
Government of Virgin Islands v. Gereau, 502 F. 2d 914, 936 (3d
Cir. 1974).  In Petitioner's case, after sending the note to the
judge, the jury continued to deliberate and eventually returned a
verdict acquitting Petitioner of multiple charges and finding him
guilty of lesser-included offenses of the remaining charges.  In
these circumstances, the Court cannot conclude that Petitioner
was prejudiced by the trial court's treatment of the jury's
second note, and therefore, the Court concludes that the Delaware
Supreme Court reasonably applied Strickland to deny Petitioner's
claims.

>           f.    Failure to prevent the introduction of
>                 Petitioner's September 1998 statements to the
>                 police

Upon his arrest in September 1998, the police videotaped the
reading of Petitioner's rights under Miranda v. Arizona, 384 U.S.
436 (1966) and his confession, in which he admitted having sexual
relations with Ms. Saunders and corroborated some of Ms.
Saunders' other allegations.  Petitioner contends that his

23

confession was illegally obtained because he did not know that he was being videotaped, and therefore, the failure of his pre-trial counsel to file a timely motion to suppress the videotaped confession constituted ineffective assistance. Petitioner also contends that his trial counsel should have raised this issue on appeal.

The Court concludes that Petitioner cannot demonstrate ineffective assistance of counsel under the Strickland standard based on any failure by his attorneys to file a motion to suppress as suggested by Petitioner. The fact that Petitioner may have been unaware that his confession was being videotaped does not warrant suppression of his statement where, as here, he was properly Mirandized and his statement was voluntarily given.

As for Petitioner's contention that certain letters he wrote to Ms. Saunders were illegally admitted into evidence and his counsel should have objected to their admission and raised this issue on appeal, the Court likewise concludes that Petitioner has not demonstrated that his attorneys were ineffective for not doing what Petitioner suggests. The letters were not obtained from Petitioner, but given to the authorities by Ms. Saunders. The letters were clearly relevant to the charges of noncompliance with bond conditions, and therefore, the Court concludes that there was no legal basis for Petitioner's attorneys to challenge their admission into evidence. Further, the Court concludes that

24

Petitioner cannot satisfy the prejudice prong of the Strickland standard, because he was acquitted of the two charges of noncompliance with bail conditions which were premised on the letters he sent to Ms. Saunders.  Accordingly, the Court concludes that Petitioner's attorneys did not provide ineffective assistance of counsel, and the Delaware Supreme Court reasonably applied Strickland to deny Petitioner's ineffective assistance of counsel claim.

> g.    Failure to object to the admission of his
>       December 1998 statement to the police

Petitioner's final allegation of ineffective assistance of counsel stems from his December 1998 arrest for noncompliance with bond conditions.  Petitioner contends that because his pre-trial counsel was representing him since September 1998, she should have been present when the police questioned him regarding his December 1998 arrest.  Petitioner contends that both his attorneys were ineffective for failing to object to the December 1998 police questioning of Petitioner without the presence of his attorney.

The Supreme Court has recognized that "[t]he Sixth Amendment right [to counsel] is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal - - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

25

<u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991); <u>see</u> <u>Texas v. Cobb</u>,
532 U.S. 162 (2001).  In this case, the Court finds no indication
in the record that Petitioner invoked his right to counsel under
<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) during his December 1998
arrest and the booking procedures that followed.  Thus, his
representation by his pre-trial counsel for the October 1998 sex
offense charges did not extend to his arrest for the
noncompliance of bond charges.  Accordingly, the Court concludes
that neither of Petitioner's attorneys were ineffective for
failing to raise this issue, and therefore, the Delaware Supreme
Court appropriately applied <u>Strickland</u> to deny Petitioner relief.

    C.  <u>Claims Procedurally Barred In The State Court</u>

    In his post-conviction appeal, Petitioner presented to the
Delaware Supreme Court his claims that: (1) his confession was
improperly admitted into evidence, (2) his October 1998 and March
1999 indictments were illegally joined, (3) the Superior Court
erred in failing to grant a mistrial after the jury submitted
notes after its deliberations, and (4) his sentence is illegal
under <u>Blakely</u> and Delaware's Truth-In-Sentencing Guidelines.  The
Delaware Supreme Court concluded that Petitioner's claims were
procedurally defaulted under Rule 61(i)(3) and (4) and denied
Petitioner relief.

    Superior Court Rule 61 constitutes an independent and
adequate state procedural ground precluding federal habeas review

absent a showing of cause for, and prejudice resulting from, the procedural default. <u>Maxion v. Snyder</u>, 2001 WL 848601, at *10 (D. Del. July 27, 2001). To demonstrate cause for a procedural default, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, Petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Id.</u> at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. <u>Edwards</u>, 529 U.S. at 451; <u>Wenger v. Frank</u>, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). To establish actual innocence, a petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995); <u>Werts</u>, 228 F.3d at 193.

27

1.  Claim for improper admission of videotaped confession and claim that the trial court erred in failing to declare a mistrial

Petitioner asserts ineffective assistance of counsel as cause for procedurally defaulting his claim that his videotaped confession was improperly admitted into evidence and his claim that the trial court erred in failing to declare a mistrial. Ineffective assistance of counsel may constitute cause for a procedural default, but only if counsel's deficiencies rise to the level of an independent Sixth Amendment violation. Coleman, 501 U.S. at 745; Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000); Murray v. Carrier, 477 U.S. 478, 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in state court must itself be independently exhausted). The Court has previously concluded that neither of Petitioner's attorneys provided constitutionally ineffective assistance of counsel. Accordingly, the Court concludes that Petitioner has failed to establish cause for his procedural default, and therefore, the Court need not discuss prejudice.

In addition, the Court concludes that Petitioner has made no colorable claim of actual innocence, and therefore, Petitioner cannot establish that a miscarriage of justice will occur if the Court does not review the merits of his claims. Because federal habeas review of Petitioner's claim is procedurally barred, the

28

Court will dismiss the claim.

2. Claim for illegally joined indictments

In October 1998, Petitioner was indicted on seven charges: five unlawful sexual intercourse offenses, possession of a deadly weapon during the commission of a felony offense, and aggravated menacing. Petitioner was indicted on two additional charges for noncompliance with conditions of bond in December 1998. The two indictments were joined upon the prosecutor's motion in May 1999. Petitioner contends that the joinder of the two separate indictments was illegal.

During Petitioner's direct appeal, he challenged two counts of the May 1999 indictment charging him with unlawful sexual intercourse in the second degree. In his Rule 61 motion, and on post-conviction appeal, Petitioner challenged the May 1999 indictment on the ground that joining the October 1998 indictment and the March 1999 indictment was illegal. On post-conviction appeal, the Delaware Supreme Court denied the claim as procedurally defaulted under Rule 61(i)(4) because Petitioner should have raised the claim when he challenged the indictment on direct appeal.

After reviewing the record, the Court concludes that Petitioner has not demonstrated cause and prejudice excusing his procedural default. First, Petitioner does not assert that any external factor prevented him from presenting this issue to the

29

Delaware Supreme Court during his direct appeal.  Second,

Petitioner cannot demonstrate prejudice because he was acquitted

on the two charges of noncompliance with bond.  In addition,

Petitioner has not shown that a miscarriage of justice will

result if the Court declines to examine the merits of his claim.

Accordingly, the Court concludes that federal habeas review of

Petitioner's claim is procedurally barred, and therefore, the

Court will dismiss Petitioner's claim.

> 3.    Claim for illegal sentencing under <u>Blakely</u> and
>        Delaware's Truth-In-Sentencing Guidelines

Petitioner next contends that his sentence is illegal

because it exceeds the limit imposed by Delaware's Truth-in-

Sentencing Guidelines ("TIS") and violates <u>Blakely v. Washington</u>,

542 U.S. 296 (2004).  Petitioner does not assert any cause for

his failure to raise this claim in his direct appeal.  The Court

acknowledges that Petitioner's citation to <u>Blakely</u> may be an

attempt to demonstrate cause because <u>Blakley</u> was decided after

his trial and direct appeal.  However, the Delaware Supreme Court

has held that <u>Blakely</u> does not apply to Delaware's sentencing

system.  <u>Benge v. State</u>, 862 A.2d 385 (Table), 2004 WL 2742431,

at *1 (Del. Nov. 12, 2004)("<u>Blakely</u> does not impact Delaware's

sentencing scheme because the SENTAC guidelines are voluntary and

non-binding.").  Further, <u>Blakely</u> does not apply retroactively to

cases that became final on direct review prior to its issuance.

<u>See</u> <u>Lloyd v. United States</u>, 407 F.3d 608, 613-15 (3d Cir. 2005)

30

(holding that <u>United States v. Booker</u>,  543 U.S. 220 (2005),
which applied the <u>Blakely</u> rule to the federal sentencing
guidelines, is not retroactively applicable to cases on
collateral review).  Thus, the Court concludes that Petitioner
has failed to demonstrate cause justifying his procedural
default, and therefore, the Court need not consider whether
Petitioner has established prejudice.  In addition, the Court
concludes that Petitioner has not alleged a colorable claim of
innocence, and therefore, a miscarriage of justice will not
result if the Court declines to review the merits of his claim.
Accordingly, the Court concludes that federal habeas review of
Petitioner's claim is procedurally barred, and therefore, the
Court will dismiss Petitioner's claim.

**IV.  CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254
petition, the court must also decide whether to issue a
certificate of appealability.  <u>See</u> Third Circuit Local Appellate
Rule 22.2.  A certificate of appealability is appropriate when a
petitioner makes a "substantial showing of the denial of a
constitutional right" by demonstrating "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  <u>Slack v.
McDaniel</u>, 529 U.S. 473, 484 (2000).  If a federal court denies a
habeas petition on procedural grounds without reaching the

31

underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would debate: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. <u>Id.</u>

The Court has concluded that the claims in Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 are either procedurally barred, noncognizable, or do not warrant relief under § 2254(d)(1). The Court is persuaded that reasonable jurists would not find these conclusions to be debatable, and therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be dismissed and the relief requested therein will be denied. In addition, his "Motion to Appoint Counsel and for an Evidentiary Hearing" will be denied as moot. (D.I. 24.)

An appropriate Order will be entered.